# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS
# EASTERN DIVISION

| | |
|---|---|
| In re<br><br>VICTOR D. CORDA,<br><br>                             **Debtor**<br><br>JOHN O. DESMOND, as he is<br>   CHAPTER 7 TRUSTEE,<br><br>                             **Plaintiff**<br><br>v.<br><br>VICTOR D. CORDA,<br>CORDA CUSTOM BUILDERS, INC.,<br>CORDA BUILDERS, INC., et al.,<br><br>                           **Defendants** | Chapter 7<br>Case No. 16-13645-FJB<br><br><br><br><br><br><br><br><br>Adversary Proceeding<br>No. 18-1150 |

## MEMORANDUM OF DECISION

By his complaint in the above-captioned adversary proceedings, plaintiff John O. Desmond (the "Trustee"), as he is trustee in bankruptcy in the reopened chapter 7 case of debtor Victor D. Corda ("Corda"), seeks relief in nine counts against Corda and his two wholly-owned corporations, Corda Custom Builders, Inc. ("CCBI") and Corda Builders, Inc. ("CBI") (collectively, "the Corda Defendants").[1] The adversary proceeding is before the Court on a motion of the Corda Defendants for summary judgment on eight of the nine counts against them (Count X being the exception) and on a cross-motion by the Trustee for summary judgment on Count II only.

---

[1] Three other counts, against other defendants, have already been dismissed: Counts VII and VIII by Stipulation of Dismissal, and Count IX by the Court for failure to state a claim on which relief can be granted.

**SUMMARY JUDGMENT STANDARD**

A party is entitled to summary judgment only upon a showing that there is no genuine dispute of material fact and that, on the uncontroverted facts, the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a).  A dispute is "genuine" if the evidence would permit a rational factfinder to resolve the issue in favor of either party. *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law." *Santiago–Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 52 (1st Cir. 2000) (quoting *Sánchez v. Alvarado*, 101 F.3d 223, 227 (1st Cir. 1996)). The court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Noonan v. Staples, Inc.*, 556 F.3d 20, 25 (1st Cir. 2009).

**COUNT I**

Corda seeks summary judgment as to Count I, by which the Trustee seeks turnover under 11 U.S.C. § 542(a) from Corda of the proceeds from sale of real estate he had developed, known as the Somersea Property. In his complaint, the Trustee alleges that the sale occurred some five or six months before Corda's bankruptcy filing, and Corda states that this timing is undisputed. Corda seeks summary judgment as to this count on only one basis, that he did not have possession, custody, or control of the proceeds on the date of which he filed his bankruptcy petition. Corda's own evidence, however, includes his deposition testimony to the effect that he received proceeds from the Somersea sale as reimbursement of his out-of-pocket expenses. There is no evidence that he had disposed of these proceeds by the petition date. Accordingly, there exists a genuine dispute of material fact on the issue of whether Corda was in possession, custody, or control of Swansea sale proceeds during the case, requiring denial of summary judgment as to this count.

**COUNT II: TURNOVER OF PROCEEDS OF OAKRIDGE PROPERTY**

In Count II, the Trustee seeks turnover of the proceeds from the sale of the real property at 32 Oakridge Avenue, Natick. The Trustee maintains that although this property was, at the time of Corda's bankruptcy filing, titled in the name of his sister, Constance R. Connors, as Trustee of the 32 Oakridge Realty Trust, Ms. Connors in fact held the property as a straw for Corda, who at all times was the de facto owner. The Trustee further alleges that Corda failed to properly disclose his interest in this property in his schedules or otherwise during the bankruptcy case, such that closure of the case did not effect an abandonment of this interest by operation of 11 U.S.C. § 554(c).

Corda seeks summary judgment as to Count II on two separate grounds. One of these—that the proceeds are earnings from services performed by the debtor after the commencement of the case, and as such are excluded from the estate by 11 U.S.C. § 541(a)(6)—is easily rejected. The Trustee has adduced evidence showing that there exists a genuine dispute of material fact as to whether the proceeds from sale of the Oakridge Property are the result of postpetition work by Corda.

The second basis on which Corda seeks summary judgment is that by operation of 11 U.S.C. § 554(c), the property was abandoned to the Debtor upon closure of the case and therefore is no longer subject to turnover under § 542(a) (if it ever was). Abandonment here amounts to an affirmative defense, and therefore the burden of proving it at trial would fall on Corda. Corda contends that abandonment occurred by operation of § 554(c) of the Bankruptcy Code. It states: "Unless the court orders otherwise, any property scheduled under section 521(a)(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title." 11 U.S.C. 554(c). Accordingly, the burden is on Corda to prove that the Oakridge Property was "scheduled under section 521(a)(1) of this title not otherwise administered." To prevail on this defense on a motion for summary judgment, Corda must submit evidence from which

3

a trier of fact could reasonably conclude that he had satisfied this burden, and that there is no genuine dispute about these facts.

Corda seeks to do this in two ways. He first argues that certain rulings the Court made at an earlier stage of this litigation, on a motion to dismiss filed by other defendants, should be followed here as the law of the case, and would require summary judgment as to Count II. The Court disagrees because the earlier ruling did not concern the Oakridge Property, the property at issue in Count II; rather, it concerned the Debtor's interests in CCBI and the Otis Street and Curve Street construction management agreements. Therefore, the law of the case strategy is unavailing as to Count II.

Corda also seeks summary judgment by recourse to evidence, but he cites only evidence that the Trustee "had notice of the existence of the Oakridge Property." Knowledge of the existence of the property is not the same as knowledge of the existence and nature of the debtor's interest in the property. On this score, the Trustee has adduced evidence that, in his bankruptcy schedules, Corda falsely represented the nature of his interest in the Oakridge Property, stating that he "may have an equitable interest" in the property, and describing that interest as an informal tenancy, a right to reside at the property for as long as he wished in exchange for his paying all bills, maintenance, and improvements relating to the property. He further indicated that the property was titled to a trust of which his sister, Constance Connors, was the sole trustee and of which she and Erica Haffner were the sole beneficiaries. He added: "Eventually Ms. Connors is contemplating moving into the Oakridge property." The interest thus disclosed—a tenancy in property owned by another entity—was not the interest that the Trustee maintains Corda had. Reading the evidence in the light most favorable to the non-moving party, a trier of fact could reasonably conclude that for purposes of § 554(c), Corda's interest in the Oakridge Property was not scheduled.

The Trustee has adduced further evidence that, when asked about his interest in the Oakridge Property at the first meeting of creditors, Corda denied that he owned it and stated that he had no

4

beneficial interest in the trust that owned it. Relying on these representations and those concerning this property in the schedules, the Trustee made no attempt to administer Corda's interest. On a record containing this evidence, a trier of fact could reasonably conclude that, when the case was closed, Corda's ownership interest in the Oakridge Property remained unadministered. Accordingly, there exists at least a genuine issue of material fact as to abandonment (if there is any evidence to support abandonment at all), and therefore summary judgment must be denied on Corda's defense of abandonment as to Count II.

By his cross-motion, the Trustee, too, seeks summary judgment as to Count II. Corda filed no response to this cross-motion and, in essence, has elected to rest on the defenses advanced through his own motion for summary judgment as to this count. The Court must nonetheless satisfy itself that summary judgment is appropriate. The Trustee's initial burden is to show two things. The first is that the Oakridge Property was, in the words of § 542(a), "property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title." In other words, he must show that the Oakridge Property was (at least) property of the estate. The second is that Corda was, during the case, in possession, custody, or control of the property. The Trustee has submitted abundant evidence to show that, notwithstanding the property's being titled in the name of a trust, Corda was its de facto owner at the time of his bankruptcy filing, and therefore that it became property of the estate under § 541(a)(1) upon his bankruptcy filing. However, the evidence also includes Corda's sworn statement, in his schedules, that the property belongs to the trust and that his interest in it was limited, in the nature of a tenancy. The evidence submitted by the Trustee places Corda's credibility in doubt, but summary judgment is not an occasion for determining credibility or otherwise making findings. There being a genuine dispute of material fact on this issue, the Trustee's motion for summary judgment as to Count II must be denied.

**COUNT III: TURNOVER OF VALUE OF OTIS STREET CMA**

In Count III, the Trustee seeks turnover from Corda under § 542(a) of the value of a construction management agreement (CMA) entered into between CCBI and Otis Street Holdings, Inc., for the development of certain real property in Wellesley, Massachusetts.  The Trustee alleges that this contract, entered into in January 2016, some eight months before Corda's bankruptcy filing, belonged to Corda, not CCBI, because he owned all the equity in CCBI, and CCBI had been administratively dissolved in 2011.  The Trustee further alleges that the CMA gave to CCBI, and therefore Corda, a 50 percent net profit interest in the Otis Holdings property, that the CMA and all payments made thereunder were property of Corda's bankruptcy estate, and that Corda did not properly disclose these in his schedules and Statement of Financial Affairs (SOFA).

Corda seeks summary judgment as to Count III on two grounds. The first is that at an earlier stage of this litigation, on a motion to dismiss filed by other defendants, the Court ruled that the property at issue in Count III had been adequately disclosed and, upon closure of the case, was abandoned by operation of § 554(c), such that it is no longer subject to turnover; and Corda further argues that this earlier ruling should be followed here as the law of the case. The Trustee responds that the law of the case doctrine need not be followed if the initial ruling was made on an inadequate record, if new evidence bears on the question, or if necessary to avoid manifest injustice. The Trustee suggests that all three of these justifications are present here.  The Trustee further contends that adherence to the ruling that Corda urges the Court to follow would be at odds with another prior ruling in this case, specifically the Court's denial of Corda's motion to dismiss as to this count.

The Trustee correctly cites First Circuit law on the issue.  "Law of the case is not a straitjacket but can be avoided—at the direction of the court that made the invoked ruling—on several different bases." *Conley v. U.S.,* 323 F.3d 7, 13 (1st Cir. 2003). Specifically, law of the case does not bar reconsideration if the initial ruling was made on an inadequate record, if newly discovered evidence

bears on the question, or if necessary to avoid manifest injustice. *Ellis v. U.S.*, 313 F.3d 636, 647-48 (1st Cir. 2002). These are exceptions to a general rule: that "unless corrected by an appellate tribunal, a legal decision made at one stage of a civil or criminal case constitutes the law of the case throughout the pendency of the litigation." *Id*. at 646, *quoting from Flibotte v. Pa. Truck Lines, Inc.*, 131 F.3d 21, 25 (1st Cir.1997). "This means that a court ordinarily ought to respect and follow its own rulings, made earlier in the same case." *Ellis v. United States*, 313 F.3d at 646.

The prior ruling that Corda asks the Court to follow is directly on point. The moving defendants had argued that the assets in question in Count III (which were among the assets in question in Count IX, the subject of the motion then before the Court) had been sufficiently scheduled that, upon closure of the case, they were abandoned by operation of § 554(c). The Court agreed:

> It is clear from the Complaint and the Trustee's admission [that Corda provided a copy of the Otis Street CMA at the time of the § 341 meeting] that the Debtor here made sufficient disclosures of his interest in CCBI, and of whatever interest he may have had in the Contracts in the name of CCBI, to meet the requirements of § 554(c). The Debtor disclosed his interest in CCBI, indicated that CCBI had contract rights, and adduced the Otis Street Contract itself. It is the existence of an asset that matters here, not its value. See *Premier Capital, LLC v. Crawford (In re Crawford)*, 841 F.3d 1, 8 (1st Cir. 2016). The Debtor's disclosures were sufficient to put the Trustee on notice of the existence of these assets, even if CCBI had been dissolved and, by virtue of that dissolution, contract rights in the name of CCBI belonged as a matter of law to the Debtor (an Issue I need not address here).

The Court went on to conclude that, by virtue of the resulting abandonment of the Count III assets (which, among others were also at issue in Count IX, the subject of the earlier ruling), the assets in question ceased to be property of the estate upon closure of the case, and that Corda's post-closure transfer of those assets to the Count IX defendants was not subject to avoidance under § 549(a) as an unauthorized transfer of property of the estate. Having been abandoned, the assets in question were no longer property of the estate, and the Court accordingly dismissed Count IX for failure to state a claim on which relief could be granted.

The first basis on which the Trustee argues that the Court should not follow that ruling here is that the record at the time was inadequate, and that newly discovered evidence "establishes a clear pattern by the Debtor of failing to disclose his assets in bankruptcy, and affirmatively concealing his nondisclosures with deceptive testimony under the oath." The evidence adduced by the Trustee in response to the present motion for summary judgment is indeed replete with evidence that Corda failed to disclose assets in bankruptcy and affirmatively concealed his nondisclosures with deceptive testimony under oath. Still, the Trustee points to no new evidence of this nature that concerns the Count III assets or that warrants reconsideration of the Court's earlier ruling as to the Count III assets. Rather, he cites evidence of Corda's duplicity *in general*, "as discussed herein throughout." The Court has canvassed the entirety of the Trustee's 25-page brief and found nothing that would bear on the earlier ruling or the Count III assets. Corda's general pattern of dishonesty is not cause to revisit the earlier ruling if the dishonesty does not affect the factual bases of that ruling. The Trustee has adduced no evidence of dishonesty that might warrant reconsideration of that ruling.

As a second basis for not following the law of the case, the Trustee suggests that it is necessary to avoid manifest injustice. The Trustee does not specify the nature of the manifest injustice. He complains of Corda's numerous acts of dishonesty, but, as I have ruled above, unless these bear upon the facts underlying the earlier ruling, they are not cause to revisit that ruling. The Trustee may also be referring to the injustice worked by the abandonment of the Count III assets on the Debtor's creditors, who, by virtue of that abandonment, are deprived of the value of those assets. But this cannot be cause to revisit that ruling. The injustice in this instance—if there was one at all, the value of the abandoned assets remaining undetermined—is a function of the Trustee's inaction, not of Corda's malfeasance.

As his third and final basis for not following the earlier ruling, the Trustee contends that it contradicts the Court's other earlier ruling, by which it ruled that Count III did not fail to state a claim on which relief could be granted. The Court finds no contradiction. The ruling on Count III addressed a

8

simple Rule 12(b)(6) motion to dismiss. The ruling on Count IX also arose on a Rule 12(b)(6) motion, but as augmented by a factual admission by the Trustee: that Corda had given the Trustee the Otis Street CMA at the first meeting of creditors. The operative record was therefore materially different and required the ruling whose consequence the Trustee now seeks to avoid. I therefore do not view the ruling on Corda's motion to dismiss as cause not to treat the ruling on Count IX as foreclosing relief on Count III.

Having rejected each of the bases on which the Trustee contends that Court should not follow the law of the case, the Court finds that there is no genuine issue of material fact. On the basis of the law of the case as articulated in the Court's earlier dismissal of Count IX, the Count III assets were abandoned upon closure of the case, and therefore the assets in question and are no longer subject to turnover under § 542(a). The Court will accordingly grant summary judgment as to Count III.

Corda also seeks summary judgment as to Count III on the further basis that the value in the CMA, and the proceeds it generated, are not subject to turnover because they are earnings from services performed by the debtor after the commencement of the case, and as such are excluded from the estate by 11 U.S.C. § 541(a)(6). Having already ruled that Corda is entitled to summary judgment on other grounds, this argument is now moot. For the record, however, I hold that it does not establish a further basis for summary judgment, as there are genuine issues of material fact concerning the extent to which value in the CMA was generated by Corda's postpetition efforts.

**COUNT IV: TURNOVER OF VALUE OF CURVE STREET CMA**

In Count IV, the Trustee seeks turnover from Corda under § 542(a) of the value of a CMA entered into between CCBI and Curve Street Holdings LLC for the development of certain real property in Wellesley, Massachusetts. The Trustee alleges that this contract belonged to Corda, not CCBI, because he owned all the equity in CCBI, and CCBI had been administratively dissolved in 2011. The Trustee further alleges that the CMA gave to CCBI, and therefore Corda, a 50 percent net profit interest in the

Curve Street property, that the CMA and all payments made thereunder were property of Corda's bankruptcy estate, and that Corda did not properly disclose these in his schedules and Statement of Financial Affairs (SOFA).

Corda seeks summary judgment as to Count IV on five grounds. First, Corda contends that pursuant to the law of the case doctrine, the Court's earlier ruling dismissing Count IX of the complaint—on the basis that the assets in issue there, which included the Count IV assets, had been abandoned—effectively disposes of Count IV as well. A court need not follow an earlier ruling when newly discovered evidence, and further development of the record, put the earlier ruling in doubt. That is the case here. The earlier ruling was based on allegations in the complaint that the counterparty to the Curve Street CMA was CCBI. In fact it was CBI, not CCBI. The difference is material because Corda had disclosed his interest in CCBI, but that disclosure effected no disclosure of contract rights held by CBI, and there is no evidence that the Curve Street CMA was otherwise disclosed in Corda's schedules. It thus appears that the Trustee has evidence that, if adduced at trial, would constitute cause not to follow the earlier ruling as to Count IV.

Second, Corda argues that he is entitled to summary judgment as to Count IV because the Curve Street contract rights belonged not to the debtor, Corda, but to CBI, a separate entity whose assets did not become property of the estate, and therefore are not subject to turnover under § 542(a). This argument fails because the Trustee has adduced evidence that CBI was formed only postpetition, and that Corda had negotiated that agreement in his own name (not that of CBI) and commenced work on that project himself before he filed his bankruptcy petition, and only later did he execute a written CMA and thereby place the contract rights in the name of CBI. On the basis of this evidence, a reasonable finder of fact could find that the contract rights memorialized in the Curve Street CMA belonged to Corda on the petition date. And it would then follow that, upon Corda's bankruptcy filing, the contract

rights became property of his bankruptcy estate under § 541(a)(1), and would in fact have been subject to turnover, regardless of whether they were later assigned by Corda to CBI without court authority.

Third, Corda argues that he is entitled to summary judgment as to Count IV because the Curve Street CMA was not entered into until after Corda filed his bankruptcy petition and therefore is not property of the bankruptcy estate. Under the relevant portion of § 541(a)(1), the bankruptcy estate includes only those interests of the debtor in property "as of the commencement of the case." 11 U.S.C. § 541(a)(1). This argument too fails because there is evidence that the contract rights given to CBI in the CMA actually had been negotiated in the name of Corda himself before the filing of the bankruptcy petition. On this evidence, the CMA did not create the contract rights but merely memorialized them and effectively assigned them from Corda to CBI. On these facts, the contract rights memorialized in the Curve Street CMA in fact belonged to Corda on the petition date and, upon his filing, became property of his bankruptcy estate under § 541(a)(1) and as such would be subject to turnover.

Fourth, Corda argues that the monies earned under the Curve Street CMA cannot be property of the estate because they are earnings from services performed by the debtor after the commencement of the case, and as such are excluded from the estate by 11 U.S.C. § 541(a)(6) (property of the estate includes "proceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case"). The Trustee responds, correctly, that this may be true as to some portion of Corda's rights to payment under the Curve Street CMA, but also that the evidence establishes that that contract was established and work commenced on the Curve Street project prepetition, so that there is a genuine issue of material fact as to the apportionment of contract proceeds between those earned as of the petition date, which are not excluded from the estate by § 541(a)(6), and those earned afterward.

And fifth, Corda argues that he is entitled to summary judgment as to Count IV because the Curve Street CMA, being a personal services contract, is one that § 365(c)(1) prevents a trustee from

11

assuming or assigning and effectively excludes from the bankruptcy estate. This argument misstates the law. Section 365(c)(1) states:

> The trustee may not assume or assign any executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if—
>
> (1)(A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor or the debtor in possession, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and
>
> (B) such party does not consent to such assumption or Assignment[.]

11 U.S.C. § 365(c)(1). For this subsection to prevent the trustee from assuming and assigning certain contract rights, "applicable law" must excuse the non-debtor party from accepting performance from an entity other than the debtor, *and* that party must not consent to the assumption and assignment. Corda has not even cited "applicable law" and has adduced no evidence that the Trustee could not have found a buyer who would consent to his assumption and assignment.

For these reasons, Corda's motion for summary judgment must be denied as to Count IV.

**COUNT V: TURNOVER OF VALUE OF SABRINA ROAD CMA**

In Count V, the Trustee seeks turnover from Corda under § 542(a) of the value of a CMA entered into prepetition between CCBI and Sabrina Holdings LLC for the development of certain real property in Wellesley, Massachusetts. The Trustee alleges that this contract belonged to Corda, not CCBI, because he owned all the equity in CCBI, and CCBI had been administratively dissolved in 2011. The Trustee further alleges that the CMA gave to CCBI, and therefore Corda, a 50 percent net profit interest in the Sabrina Road property, that the CMA and all payments made thereunder were property of Corda's bankruptcy estate, and that Corda did not properly disclose these in his schedules and SOFA. Corda seeks summary judgment as to Count V on four of the grounds as he advanced against Count IV.

12

First, Corda contends that the Sabrina Road CMA was not property of the bankruptcy estate because the contract rights belonged not to Corda but to CBI, a separate non-debtor entity whose assets did not become property of the estate, and therefore are not subject to turnover under § 542(a). (As a preliminary matter, I note that the parties are in agreement that the Trustee's allegation in Count V that this CMA was entered into by CCBI is incorrect and that the party to this CMA is CBI.) This argument fails because the Trustee has adduced evidence that CBI was formed only postpetition, and that Corda had negotiated that agreement in his own name (not that of CBI) and commenced work on that project himself before he filed his bankruptcy petition, and only later did he execute a written CMA and thereby place the Sabrina Road contract rights in the name of CBI. On this evidence, a finder of fact could reasonably find that the contract rights memorialized in the Sabrina Road CMA in fact belonged to Corda on the petition date and, upon his filing, became property of his bankruptcy estate under § 541(a)(1), and would in fact have been subject to turnover, regardless of whether they were later assigned by Corda to CBI without court authority.

Second, Corda argues that he is entitled to summary judgment as to Count V because the Sabrina Road CMA was not entered into until after the debtor, Corda, filed his bankruptcy petition and therefore is not property of the bankruptcy estate. Under the relevant portion of § 541(a)(1), the bankruptcy estate includes only those interests of the debtor in property "as of the commencement of the case." 11 U.S.C. § 541(a)(1). This argument too fails because there is evidence that the contract rights given to CBI in the Sabrina Road CMA actually had been negotiated by Corda in his own name before the filing of the bankruptcy petition. On this evidence, the CMA did not create the contract rights but merely memorialized them and effectively assigned them from Corda to CBI. A finder of fact could reasonably find that the contract rights memorialized in the Sabrina Road CMA in fact belonged to Corda on the petition date. It would then follow that, upon Corda's bankruptcy filing, these contract rights became property of his bankruptcy estate under § 541(a)(1) and were subject to turnover.

13

Third, Corda argues that the monies earned under the Sabrina Road CMA cannot be property of the estate because they are earnings from services performed by the debtor after the commencement of the case, and as such are excluded from the estate by 11 U.S.C. § 541(a)(6). The Trustee responds correctly that this may be true as to some portion of Corda's rights to payment under the Sabrina Road CMA, but also that the evidence establishes that that contract was established and work commenced on the Sabrina Road project prepetition, so that there is a genuine issue of material fact as to the apportionment of contract proceeds between those earned as of the petition date, which are not excluded for the estate by § 541(a)(6), and those earned afterward.

And fourth, Corda argues that he is entitled to summary judgment as to Count V because the Sabrina Road CMA, being a personal services contract, is one that § 365(c)(1) prevents a trustee from assuming or assigning and effectively excludes from the bankruptcy estate. As I explained above, this argument misstates the law. Section 365(c)(1) prevents a bankruptcy trustee from assuming and assigning certain contract rights only if "applicable law" excuses the non-debtor party from accepting performance from an entity other than the debtor *and* that party does not consent to the assumption and assignment. Corda has not cited an "applicable law," and he has adduced no evidence that the Trustee could not have found a buyer who would consent to his assumption and assignment.

For these reasons, Corda's motion for summary judgment must be denied as to Count V.

**COUNT VI: TURNOVER OF VALUE OF ALLEN ROAD CMA**

In Count VI, the Trustee seeks turnover from Corda under § 542(a) of the value of a CMA entered into prepetition between CCBI and 18 Allen Road LLC for the development of certain real property in Wellesley, Massachusetts. The Trustee alleges that this contract belonged to Corda, not CCBI, because he owned all the equity in CCBI, and CCBI had been administratively dissolved in 2011. The Trustee further alleges that the CMA gave to CCBI, and therefore Corda, a 50 percent net profit interest in the Allen Road property, that the CMA and all payments made thereunder were property of

Corda's bankruptcy estate, and that Corda did not properly disclose these in his schedules and SOFA. Corda seeks summary judgment as to Count VI on the same four grounds as he advanced against Count V.

First, Corda contends that the Allen Road CMA was not property of the bankruptcy estate because the contract rights belonged not to Corda but to CBI, a separate non-debtor entity whose assets did not become property of the estate, and therefore are not subject to turnover under § 542(a). (As a preliminary matter, I note that the parties are in agreement that the Trustee's allegation in Count VI that this CMA was entered into by CCBI is incorrect, that the party to this CMA is CBI, and that the CMA with CBI was entered into postpetition.) This argument fails because the Trustee has adduced evidence that CBI was formed only postpetition, and that Corda had negotiated that agreement in his own name (not that of CBI) and commenced work on that project himself before he filed his bankruptcy petition, and only later did he execute a written CMA and thereby place the Allen Road contract rights in the name of CBI. On this evidence, a finder of fact could reasonably find that the contract rights memorialized in the Allen Road CMA in fact belonged to Corda on the petition date and, upon his filing, became property of his bankruptcy estate under § 541(a)(1), and would in fact have been subject to turnover, regardless of whether they were later assigned by Corda to CBI without court authority.

Second, Corda argues that he is entitled to summary judgment as to Count VI because the Allen Road CMA was not entered into until after he filed his bankruptcy petition and therefore is not property of the bankruptcy estate. Under the relevant portion of § 541(a)(1), the bankruptcy estate includes only those interests of the debtor in property "as of the commencement of the case." 11 U.S.C. § 541(a)(1). This argument too fails because there is evidence that the contract rights given to CBI in the Allen Road CMA actually had been part of a contract entered into by Corda in his own name before the filing of the bankruptcy petition. On this evidence, the CMA did not create the contract rights but merely memorialized them and effectively assigned them from Corda to CBI. A finder of fact could reasonably

15

find that the contract rights memorialized in the Sabrina Road CMA in fact belonged to Corda on the petition date. It would then follow that, upon Corda's bankruptcy filing, these contract rights became property of his bankruptcy estate under § 541(a)(1) and were subject to turnover.

Third, Corda argues that the monies earned under the Allen Road CMA cannot be property of the estate because they are earnings from services performed by the debtor after the commencement of the case, and as such are excluded from the estate by 11 U.S.C. § 541(a)(6). The Trustee responds, again correctly, that this may be true as to some portion of Corda's rights to payment under the Allen Road CMA, but also that the evidence establishes that that contract was established and work commenced on the Allen Road project prepetition, so that there is a genuine issue of material fact as to the apportionment of contract proceeds between those earned as of the petition date, which are not excluded for the estate by § 541(a)(6), and those earned afterward.

And fourth, Corda argues that he is entitled to summary judgment as to Count VI because the Allen Road CMA, being a personal services contract, is one that § 365(c)(1) prevents a trustee from assuming or assigning and effectively excludes from the bankruptcy estate. As I explained above, this argument misstates the law. Section 365(c)(1) prevents a bankruptcy trustee from assuming and assigning certain contract rights only if "applicable law" excuses the non-debtor party from accepting performance from an entity other than the debtor *and* that party does not consent to the assumption and assignment. Corda has not cited an "applicable law," and he has adduced no evidence that the Trustee could not have found a buyer who would consent to his assumption and assignment.

For these reasons, Corda's motion for summary judgment must be denied as to Count VI.

**COUNTS XI AND XII**

Corda and CBI also seek summary judgment as to Counts XI and XII on the basis that they are time-barred by 11 U.S.C. § 549(d), the counts having been asserted for the first time only after this bankruptcy case was closed, and the Trustee having no basis for equitable tolling of the deadline. In

16

Count XI (against CBI), the Trustee seeks to avoid unauthorized postpetition transfers of property of the estate under § 549(a). Subsection 549(d) states: "An action or proceeding under this section may not be commenced after the earlier of—(1) two years after the date of the transfer sought to be avoided; or (2) the time the case is closed or dismissed." 11 U.S.C. § 549(d). The Trustee concedes that he brought this count after the case was closed, and thus after the deadline established in § 549(d), but he maintains that the deadline was equitably tolled.

I begin by denying the motion as to Count XII. Though its caption in the complaint cites § 549(a) and entitles this count "Unauthorized Postpetition Transfer Against Victor D. Corda," in fact this count alleges no transfer at all. The operative allegations of fact are that Corda retained funds that belonged to the estate and therefore should have been turned over to him. Count XII is therefore not governed by § 549(a), for avoidance of an "unauthorized transfer of property of the estate," 11 U.S.C. § 549(a), but by § 542(a). The limitations period in § 549(d) applies only to actions or proceedings "under this section," meaning § 549. 11 U.S.C. § 549(d). Subsection (d) is therefore not a defense to Count XII, and not a basis on which Corda can establish entitlement to judgment as a matter of law.

Count XI does allege one or more transfers, albeit obliquely and without specificity as to what was transferred and when. The operative allegation in Count XI is simply this: "To the extent Corda Builders, Inc. received property of the Debtor as set forth above, such receipt constituted an unauthorized postpetition transfer of the property of the Debtor's estate pursuant to 11 U.S.C. § 549." Count XI also incorporates by reference the entirety of the 103 paragraphs that precede it, and the only mention in all of these of transfers to CBI (the subject of Count XI) is in paragraph 102 as follows: "Corda Builders, Inc. may have improperly received property of the Debtor including without limitation all or a portion of the Debtor's interest in the Oakridge, Allen Road, Sabrina Holdings, Curve Street and Otis Holdings properties." This statement is indefinite ("*may have*" received) and supplies no date or dates on which the possible transfers occurred.

17

By its motion for summary judgment as to this count, CBI argues that equitable tolling is inappropriate because the evidence shows that the Trustee did not diligently investigate the Debtor's interests in property—his rights as to certain construction projects—as of the commencement of the bankruptcy case.  But the question for equitable tolling as to Count XI is whether the Trustee had reason to know of the postpetition transfers of those assets before the case was closed. The Trustee's knowledge or not of the interests transferred is not the focus of the present inquiry; the proper focus is on the Trustee's knowledge of the transfer of the assets. Corda does not contend that the Trustee knew of, or had reason to know of, the transfers before the case was closed. For these reasons, summary judgment must be denied as to Count XI.

**CONCLUSION**

For the reasons set forth above, the Court will, by separate orders, allow Corda's motion for summary judgment as to Count III and deny it as to the balance of the counts it challenges, and will deny the Trustee's cross-motion for summary judgment as to Count II.

Date:  August 18, 2021

_____
Frank J. Bailey
United States Bankruptcy Judge